# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALAN D. WEINBERGER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 04-1130 |
| v. | ) | (EGS) |
| | ) | |
| STEFAN F. TUCKER. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Stefan F. Tucker hereby moves this Court to dismiss, with prejudice, plaintiffs' Complaint for failure to state a claim on which relief can be granted. Plaintiffs are collaterally estopped from asserting the claims in their Complaint because the same issues were litigated and determined against them last year in a lawsuit before the Honorable Claude M. Hilton in the District Court for the Eastern District of Virginia. Counts I and II of the Complaint, which purport to state claims for fraud and fiduciary duty, merely duplicate the professional negligence claim asserted in Count III, and they should be dismissed for this reason, as well.

Support for this motion is set forth in an accompanying memorandum of points and authorities.

Defendant requests an opportunity for oral argument on this motion.

RESPECTFULLY SUBMITTED

*Deborah J. Jeffrey*

Deborah J. Jeffrey, D.C. Bar No. 416157
ZUCKERMAN SPAEDER LLP
1201 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 778-1800
(202) 822-8106
Attorney for Defendant Stefan F. Tucker

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALAN D. WEINBERGER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 04-1130 |
| | ) | (EGS) |
| v. | ) | |
| | ) | |
| STEFAN F. TUCKER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS
## CLAIMS BARRED BY COLLATERAL ESTOPPEL
## AND DUPLICATIVELY PLED

Deborah J. Jeffrey
D.C. Bar No. 416157
ZUCKERMAN SPAEDER LLP
1201 Connecticut Avenue, N.W.
Washington, DC 20036
Phone: (202) 778-1800
Fax:    (202) 822-8106

Attorneys for Defendant Stefan F. Tucker

## TABLE OF CONTENTS

Introduction...........................................................................................................................1

Factual Background................................................................................................................2

Argument...............................................................................................................................10

    I.   Collateral Estoppel Bars Plaintiffs From Asserting These Claims....................................11

    II.  Plaintiffs' Claims for Breach of Fiduciary Duty and Fraud Must
        Be Dismissed for Redundancy..............................................................................................22

Conclusion.............................................................................................................................29

## TABLE OF AUTHORITIES

CASES

A.I. Credit Corp, Inc. v. Aguilar & Sebastinelli, 113 Cal.
   App.4th 1072 (2003) ............................................................................................ 18
Ali Baba, Inc. v. Wilco, Inc., 482 A.2d 418 ................................................................ 12
Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166 (D.C. Cir. 2003) ......................... 23
Borden v. Clement, 261 B.R. 275 (N.D. Ala. 2001) .................................................... 24
Bryson v. Gere, 268 F. Supp.2d 46 .............................................................................. 12
Columbia Cas. Co. v. Playtex FP, Inc., 584 A.2d 1214 (Del. 1991) .......................... 12
Dalo v. Kivitz, 596 A.2d 35 (D.C. 1991) ..................................................................... 29
Daniels v. Lebit, 749 N.Y.S.2d 149 (N.Y. Sup. App. 2002) ....................................... 25
EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir. 1997) ............. 10
Endicott v. Johnrendt, 2000 WL 796576, * 4 (Ohio App. 2000) ................................ 26
Fabricare Equipment Credit Corp. v. Bell, Boyd & Lloyd, 767 N.E.2d 470
   (Ill. App. 2002) ..................................................................................................... 25, 26
Firestone Tire and Rubber Co. v. Risjord, 449 U.S. 368 (1981) ................................. 20
Fischer v. Longest, 637 A.2d 517 (Md. App. 1994) .................................................... 25
Flanagan v. U.S., 465 U.S. 259 (1984) ........................................................................ 20
Griffin v. Fowler, 579 S.E.2d at 853 ........................................................................... 27
Hishon v. King & Spaulding, 467 U.S. 69 (1984) ....................................................... 10
Hogue v. Hopper, 728 A.2d 611 (D.C. 1999) .............................................................. 12
Holland v. Kohn, 12 Fed. Appx. 160, 2001 WL 685543 (June 19, 2001) .................. 19
In re Hurst Lincoln Mercury, Inc., 80 B.R. 894 (Bankr. S.D. Ohio, 1987) ................ 22
In re Joint Eastern and Southern Districts Asbestos Litigation,
   737 F. Supp. 735 (E.D.N.Y. 1990) ....................................................................... 19
In re TI.B, 762 A.2d 20 (D.C. 2000) ............................................................................ 20
Jackson v. District of Columbia, 412 A.2d 948 (D.C. 1980) ...................................... 12
McElroy v. Robinson & Cole, 2004 WL 1292042, *3n.9 (Mass. App. 2004) ............ 23
Meng v. Schwartz ......................................................................................................... 11
Messick v. Star Enterprises, 655 A.2d 1209 (Del. 1995) ............................................ 12
Mohler v. Unger, 1994 WL 1860577, * 9-10 (S.D. Ohio , Aug. 26, 1994) ................ 24
Monyek v. Klein, 329 So.2d 25 (Fla. App., Third Dist., 1976) ................................... 16
Phillips v. Hughes & Luce, LLP, 1993 WL 532057
   (Tex. App. Dec. 23, 1993) .................................................................................... 18
Reich v. Club Universe, 125 Cal. App.3d 965 (1981) ................................................. 20
Richardson-Merrell, Inc. v. Koller, 472 U.S. 424 (1985) ..................................... 20, 22
Russell v. State, 739 So.2d 58 (Ct. Crim. App. Ala. 1999) ......................................... 18
Sage Realty Corp. v. Proskauer Rose LLP, 675 N.Y.S.2d 14
   (N.Y. Sup. App. 1998) ............................................................................... 24, 25, 26
Saidi v. WMATA, 928 F. Supp. 21 (D.D.C. 1996) ...................................................... 28
Seippel v. Jenkens & Gilchrist, 2004 WL 1907315, * 8 (S.D.N.Y. 2004) ................. 27
Shideler v. Dwyer, 417 N.E.2d 281 (Ind. 1986) ......................................................... 25

Smith v. Public Defender Service for District of Columbia, 686 A.2d 210 (D.C. 1996) ............... 4

Spencer v. McGill, 622 N.E.2d 7 (Ohio App. 1993) .................................................................. 26

State v. Ballard, 1997 WL 430849 (Ohio App. July 25, 1997) ................................................... 19

Thomas v. Albright, 77 F. Supp.2d 114 (D.D.C. 1999).............................................................. 14

Tyree v. Meese, 1988 WL 135037 (D.D.C.) ............................................................................. 19

Waldman v. Levine, 544 A.2d 683 (D.C. 1988)......................................................................... 29

Weil Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.,
 780 N.Y.S.2d 593 (N.Y. Sup. 2004)....................................................................................... 25

Wiggins v. Hitchens, 853 F. Supp. 505 (D.D.C. 1994) .............................................................. 11

Williams v. Mordkofsky, 901 F.2d 158 (D.C. Cir. 1990)............................................................ 29

Wilson v. Hart, 829 A.2d 511 (D.C. 2003)............................................................................... 12

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS
CLAIMS BARRED BY COLLATERAL ESTOPPEL
AND DUPLICATIVELY PLED**

### Introduction

In violation of principles of collateral estoppel, plaintiffs seek to relitigate before this Court issues that they previously litigated and lost in a lawsuit tried last year in the Eastern District of Virginia.  They want to shift the liability for their business losses on a guarantee onto the shoulders of counsel.  They assert that the guarantee was infected by counsel's purported conflict of interest and that plaintiffs—an attorney and a company that he dominated—were misled as to its meaning and effect.

The Honorable Claude M. Hilton conclusively rejected these same contentions when they were raised as defenses to the enforcement of that guarantee.  In Findings of Fact and Conclusions of Law, he held that the guarantee was binding, enforceable and unambiguous in all respects and that it was negotiated at arms' length, with opposing parties individually represented by their respective attorneys.  Moreover, when plaintiffs in this case moved to disqualify the attorney and his firm from representing their adversary in the enforcement of the guarantee, Judge Hilton denied that motion, finding on the record that plaintiffs had waived any conflict of interest in connection with the guarantee.  Plaintiffs are bound by these adverse determinations.  The claims in this lawsuit directly contradict those determinations, and the Complaint must be dismissed for failure to state a claim on which relief can be granted.

Not only do plaintiffs seek another bite at the apple, they want to take that bite three times, bringing duplicative counts for malpractice, breach of fiduciary duty and fraud.  All of these claims are based on the same factual allegations, rely on the same professional standards,

1

allege the same damages, and seek the same relief. Plaintiffs have not pled three distinct claims, but have instead asserted one claim in triplicate. Because the essence of these claims is professional negligence, the remaining counts should be dismissed or stricken.

## **Factual Background**

Plaintiffs assert that Stefan F. Tucker, a partner in the law firm of Venable Baetjer Howard & Civiletti (Venable), secretly favored the interests of Lev Volftsun, another firm client with whom they were doing business, in the negotiation, drafting and enforcement of a guarantee of Mr. Volftsun's investment in their high-tech companies. Cmplt ¶ 2. In January 2001, Mr. Volftsun initially invested $250,000 in TechnologyNet, Inc. (TechNet), an internet company founded by plaintiff Alan D. Weinberger, receiving in return a Senior Bridge Note. Cmplt ¶¶ 27-30. Plaintiffs concede that Mr. Tucker sought and received written consent from Mr. Weinberger (on behalf of himself, TechNet and The ASCII Group, Inc. (ASCII), of which he owned more than 90% of the stock) and from Mr. Volftsun that Mr. Tucker and Venable were representing only Mr. Volftsun and not Mr. Weinberger or his businesses in connection with that transaction. Cmplt ¶ 33. The consent letter described Mr. Tucker's professional relationship to the various parties and provided, in pertinent part:

> [A]t one point or another, Venable has represented all of you in connection with one or more matters.
>
> Notwithstanding the foregoing, it is recognized by Lev, Alan, TechnologyNet, Inc. and The ASCII Group, Inc. that, with regard to Lev's $250,000 loan to TechnologyNet, Inc., as evidenced by Bridge Note No. 7, and Lev's acquisition of 175,000 options to acquire TechnologyNet, Inc. stock, Venable, and I personally, have represented only Lev. . . .
>
> Lev, Alan, TechnologyNet, Inc. and The ASCII Group, Inc. agreed to waive any actual or potential conflicts of interest.

A copy of the letter executed by Mr. Weinberger, referenced in paragraph 33 of the Complaint, is attached as Exhibit 1.

The ASCII Guarantee

In mid 2001, Mr. Weinberger solicited an additional $150,000 from Mr. Volftsun, this time in the form of a Convertible Debenture in ASCII Technology Holdings, Inc. (ATH), a holding company being formed to own the stock of TechNet and ASCII.  Cmplt ¶¶ 45-46, 48, 54. The terms of the acquisition were still under discussion—as Judge Hilton ultimately concluded, ATH did not in fact acquire ASCII and TechNet until March 2003—and Mr. Volftsun wanted additional security in return for what was in effect two loans totaling $400,000.  Cmplt ¶¶ 71-73, 79-80.  Although TechNet, as a start-up, was not in a position to provide such security, Mr. Weinberger agreed that ASCII, which was well established, would guarantee both loans.  To this end, Mr. Weinberger signed on behalf of ATH, the effective borrower, and on behalf of ASCII, the guarantor, an agreement providing that

> With respect to Convertible Debenture No. 3 [the $150,000 loan/investment in ATH], as well the Senior Bridge Note in the amount of $250,000 of TechnologyNet, Inc., which Lev [Volftsun] currently owns, it us understood and agreed that until both The ASCII Group, Inc. and TechnologyNet, Inc. have become wholly owned subsidiaries of ATH, The ASCII Group, Inc. will guarantee all of the same . . . so that, in all events, the full assets of The ASCII Group, Inc. will be subject to call in the event of default on either Convertible Debenture No. 3 or the Senior Bridge Note owned by Lev [Volftsun]. . . .

Letter Agreement dated July 3, 2001, executed by Volftsun, ASCII and ATH (ASCII Guarantee), attached at Exhibit 2 and referenced in paragraphs 79-80 of the Complaint.

Another provision expressly required that the agreement be construed in Mr. Volftsun's favor.[1]

As with the previous loan, Mr. Tucker represented Mr. Volftsun in the development of this

agreement.

Enforcement of the ASCII Guarantee and Its Focus on the Role of Counsel

Neither TechNet nor ATH repaid the loans when they came due, and Mr. Volftsun made

demand on the guarantee.[2] Cmplt ¶ 123.  At Mr. Weinberger's direction, however, ASCII

refused to honor the guarantee, claiming: (1)  that it had expired as soon as the Board of TechNet

voted to merge the company into ATH as a subsidiary, before ASCII even signed it; and (2) that

he had been fraudulently induced into making the agreement in the first place.[3]

*ASCII's Unsuccessful Effort to Disqualify Venable*[4]

Ultimately, Mr. Volftsun was forced to file suit to enforce the guarantee.  In that suit, *Lev*

*Volftsun v. The ASCII Group, Inc., TechnologyNet, Inc., and ASCII Technology Holdings, Inc,*

Civil Action 02-1717-A (*ASCII I*), Mr. Volftsun was represented by a Venable partner.[5]  Cmplt

¶¶ 125-126.  The defendants objected and moved to disqualify Venable, asserting that it had a

conflict of interest and that Mr. Tucker would be a critical trial witness.  ASCII *et al.* contended

---

[1] Paragraph 6 of the Agreement provided: "This Agreement is intended, as set forth above, as an inducement to Lev to continue his financial support and to become a Director of ATH.  Accordingly, at all times, this Agreement shall be interpreted in the manner most favorable to Lev."  ASCII Guarantee, Exhibit 2, at ¶ 6.

[2] The TechNet Note became due on July 29, 2001, and the ATH Note became due on January 2, 2003. Cmplt ¶ 29 [TechNet Loan].

[3] Mr. Weinberger and his affiliates also alleged that Mr. Volftsun had agreed to convert his debt in TechNet and ATH into equity in the holding company prior to executing the guarantee, a contention not directly relevant to these proceedings and ultimately found by Judge Hilton to be untrue.

[4] This Court may take judicial notice of the proceedings in *ASCII I* to determine their preclusive effect in connection with Mr. Tucker's motion to dismiss.  *Smith v. Public Defender Service for District of Columb*ia, 686 A.2d 210, 212 (D.C. 1996) (inclusion of briefs, transcripts, motions and orders from prior adjudication are not "matters outside the pleading" and do not convert 12(b)(6) motion into summary judgment motion).

[5] Weinberger was not a defendant in the case because he had no individual obligations under the Guarantee.  He was, however, clearly in privity with ASCII.  He signed the waiver letter on ASCII's behalf and testified that he had sole control of ASCII and could agree on its behalf to the merger with ATH.  Cmplt ¶ 78; Trial Tr. 175 (testimony that Mr. Weinberger owns 93-95% of ASCII as of June 2003).  He was Chairman and CEO of ASCII and was the only representative of the defendants to testify at trial.

that, as of the time of Mr. Volftsun's second loan, TechNet and ASCII were former clients of

Venable on substantially related matters, while Mr. Weinberger was then a current client of the

firm for estate planning.  Transcript of March 14, 2003 Hearing on Motion to Disqualify Counsel

(DQ Hearing Tr.) at 4, attached as Exhibit 3.  ASCII and its affiliates contended that the original

waiver covered only the TechNet $250,000 loan and not the subsequent ATH loan of $150,000

or ASCII's guarantee of both.  Moreover, they argued that, by virtue of its representation of

Weinberger, Venable might have received confidential information that could be used to the

detriment of the defendants.  Finally, the defendants in *ASCII I* urged that Mr. Tucker would be

an important witness at trial regarding the Guarantee, expressing concern about the weight that

his views would carry with the trier of fact.  Motion to Disqualify Counsel (DQ Motion) at 8-9,

Exhibit 4.  Following briefing and a hearing, in which the court questioned counsel closely about

the relationship between the loan transactions and the guarantee, Judge Hilton denied the motion

to disqualify Venable.[6]  In a decision fatal to the claims by plaintiffs in this case, he determined

conclusively that the initial waiver covered the subsequent ATH debenture and the Guarantee

because the parties were simply continuing their established course of conduct, and the

defendants were clearly on notice that Venable was representing Mr. Volftsun alone:

> [A]t the time they were using Venable, they were on notice and
> fully aware and waived the fact that Venable was representing
> [Volftsun], it seems to me.

> **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

> Judge Hilton:  All of those defendants signed the waiver?

> Mr Doumar [Defendants' counsel]:  Well, ASCII Group signed the
> waiver, Your Honor, as to the loan to TechNet.  ASCII Group
> never signed a waiver as to representation against itself relating to
> any guarantees. \* \* \* \* \* \*

---

[6] Copies of the parties' briefs, the hearing transcript and the Order denying the motion to disqualify are attached as
Exhibits 3-7.

Judge Hilton:  How can somebody in good faith, after they sign a waiver and know that the plaintiff is being represented by these people, how can they now come in in good faith and say, we didn't know anything about it and the information they got, the privileged information that they got from us was done in an improper kind of way?

How can they raise that?

DQ Hearing Tr. at 9, 11, attached as Exhibit 3.

### *Judge Considers Tucker's Actions To Determine Meaning, Enforceability of Guarantee*

As plaintiffs acknowledge, the ASCII Guarantee construed and enforced by Judge Hilton in *ASCII I* is the same ASCII Guarantee that is the subject of this malpractice action. *See, e.g.*, Complaint (Cmplt) ¶¶ 125-126, 135-137 (discussing *ASCII I*).  It is therefore no surprise that the defenses asserted by ASCII and its affiliates required Judge Hilton to revisit the relationship between Mr. Tucker and ASCII and its affiliates in order to reach a final judgment regarding its meaning and enforceability.  ASCII interjected these issues into the case, by asserting the affirmative defense of fraudulent inducement and by contending that the Guarantee was ambiguous and that Weinberger's communications with Mr. Tucker would establish the parties' intent.

First, as in the Complaint before this Court, ASCII and its affiliates asserted that Weinberger had been fraudulently induced to sign the ASCII Guarantee.  *See* Answer and Counterclaim filed by ASCII on February 14, 2003 (asserting as an affirmative defense, "Any alleged guarantees, if they exist, were fraudulently induced."), attached as Exhibit 8.[7] Specifically, ASCII and its affiliates attempted to persuade the court that Mr. Tucker had lulled Mr. Weinberger into believing that the ASCII Guarantee was of limited duration and would

---

[7] Compare Cmplt ¶¶ 90-91, 172, 177-81 (asserting claims for fraud).

expire as soon as TechNet's Board had voted to make the company a subsidiary of ATH.

Transcript of Trial in ASCII I before Judge Hilton on June 11-12, 2003 (Trial Tr.), Exhibit 9, at

182-84. In support of this defense, they offered Weinberger's testimony that, without that

assurance by Mr. Tucker, Weinberger would not have signed the ASCII Guarantee. Trial Tr. at

160, 182-84; *compare* Cmplt ¶¶ 84, 90-92. ASCII offered as evidence of Mr. Weinberger's

reliance and intentions the same July 2, 2001 letter that plaintiffs describe in paragraph 68 of

their Complaint in this case. Trial Tr. at 182-84, 261-64. Mr. Weinberger testified generally as

to his communications with Mr. Tucker, claiming that he believed Mr. Tucker to have been

representing *him* in connection with the ASCII Guarantee and to have therefore relied on him in

a variety of ways, corresponding to the allegations in paragraphs 59-70; 90-94 of the Complaint.

Trial Tr. at 182-84, 252, 263-64.[8] Defendants, as well as Mr. Volftsun, called Mr. Tucker to

testify at trial. Trial Tr. at 115-16.

   This evidence was, of course, disputed. Mr. Tucker testified that he did not represent

ASCII, its affiliates, or Weinberger in connection with the ASCII Guarantee. Trial Tr. at 110;

Cmplt ¶ 132. His testimony was corroborated by attorney Robert Freer, in-house counsel at

ATH, one of ASCII's affiliates, who also described himself as "special counsel to the chairman"

of TechNet, *i.e.*, Mr. Weinberger. Trial Tr. at 131. Freer participated in the negotiation and

drafting of the ASCII Guarantee. He testified that Weinberger personally participated in some of

the negotiations, including a meeting in which Volftsun participated with Tucker present as his

counsel. Trial Tr. at 132. While the negotiations were underway, Freer also discussed the terms

with Weinberger. Trial Tr. at 132. Both Freer and Tucker testified in *ASCII I* that the ASCII

Guarantee was a document negotiated at arms' length by parties represented by separate counsel,

---

[8] Similar arguments appeared in their summary judgment pleadings. *See, e.g.*, ASCII's Motion for Partial Summary Judgment, Exhibit 1 , at 16.

Tucker for Volftsun and Freer for ASCII and its affiliates.  Trial Tr. 110, 126 (Tucker), 131-32

(Freer).  Indeed, the disputed Guarantee language first appeared in a draft transmitted by Mr.

Freer to Mr. Tucker, attached to an email reflecting that Freer had discussed the agreement with

Weinberger.  Pltfs Ex. 12 in *ASCII I*, attached as Exhibit 10.  As for the July 2, 2001 letter,

Tucker testified that he had not received it and would not have discouraged Weinberger from

consulting personal counsel.  Trial Tr. at 110-11, 122.

        Using much the same evidence, ASCII and its affiliates suggested for their second

defense in *ASCII I* that the Guarantee was ambiguous as to when it expired, or that the parties

had failed to achieve a meeting of the minds on this essential term.  Defendants' Reply in

Support of Their Motion for Partial Summary Judgment, dated May 21, 2003, attached as

Exhibit 12, at 5-8.  They argued that "the Court could look to any manifestation of intent

regarding when the companies became subsidiaries," the milestone for extinguishing the

Guarantee.  *Id* at 5.[9]  ASCII *et al.*'s contentions in *ASCII I* were identical to the issues that they

raise in this case.  Specifically, ASCII contended to Judge Hilton, as it does here, that the ASCII

Guarantee expired upon the July 13, 2001 vote of TechNet's Board, an event that took place

three days *before* Weinberger signed the Guarantee on ASCII's behalf.  Trial Tr. at 182-84;

Cmplt ¶¶ 75-80.  They urged the court that the July 2, 2001 letter captured Weinberger's intent

and understanding of the duration of the Guarantee[10]; that Weinberger reasonably relied on Mr.

Tucker to protect his and ASCII's interests because he was a longstanding client[11]; and that Mr.

---

[9] ASCII et al. made a similar argument in opposing Volftsun's summary judgment motion, contending that the July 2, 2001 letter reflected the intent and understanding of Messrs. Weinberger and Tucker.  Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 13, at 12.
[10] *Cf* Cmplt ¶¶ 68.
[11] *Cf* Cmplt ¶¶ 59-67, 90-93, 175-82.

Tucker convinced Weinberger not to consult another attorney regarding the Guarantee.[12] *Id.* at 5-8.

ASCII Loses the Case and Abandons Its Appeal

Following a two-day bench trial, Judge Hilton ruled in favor of Mr. Volftsun on each of his claims and squarely rejected each of ASCII's contentions. Cmplt ¶¶ 131, 135. He entered detailed Findings of Fact and Conclusions of Law, which are referenced in paragraph 135 of plaintiffs' Complaint and are attached as Exhibit 14. Two of those findings and conclusions preclude the claims that plaintiffs purport to assert in this action. Specifically, Judge Hilton found that the ASCII Guarantee was the product of bilateral negotiations in which ASCII was separately represented by Mr. Freer:

> A Letter Agreement containing the guarantee was negotiated between Volftsun's counsel and Robert Freer and David Adams on behalf of ASCII and ATH, and became effective on July 3. 2001.

Findings of Fact and Conclusions of Law, Exhibit 14, ¶ 15. This finding relates closely to Judge Hilton's then-recent refusal to disqualify Venable, in which he concluded that Mr. Weinberger appreciated the fact that Mr. Tucker represented only Mr. Volftsun in the ASCII Guarantee and that Weinberger had consented to that arrangement on behalf of himself and his corporations. Thus, neither Mr. Weinberger nor ASCII relied upon Mr. Tucker to protect their interests with respect to the Guarantee.

In addition, ASCII and its affiliates were not misled or confused about the meaning and duration of the ASCII Guarantee, because that document was unambiguous as a matter of law:

> When the language of a contract is clear and unambiguous, the parties' intent is determined by giving the language its ordinary

---

[12] *Cf* Cmplt ¶¶ 69-69.

and usual meaning. Extrinsic evidence is considered only if there
is ambiguity in the contract.

The language of Paragraph 4 of the Letter Agreement is clear
and unambiguous concerning ASCII's guarantee. This provision
states that ASCII's guarantee of Volftsun's loans remained in
effect "until both The ASCII Group, Inc. and TechnologyNet, Inc.
have become wholly owned subsidiaries of ATH." A written
agreement of merger, or alternatively a written certificate of
merger must be filed with the Secretary of State of Delaware when
a Delaware corporation merges with another corporation. Those
instruments become effective on their filing date, [respectively
March 13 and 14, 2003.]

Consequently ASCII, as guarantor, was liable to Volftsun in the amount of $515,253.43,

representing the principal and interest on the original $250,000 loan to TechNet and the

$150,000 Convertible Debenture in ATH. Findings of Fact and Conclusions of Law,

Conclusions (citations omitted), Exhibit 14. Judge Hilton also awarded attorney's fees to

Volftsun.[13]

ASCII and its affiliates filed a Notice of Appeal (Cmplt ¶ 137), but chose not to pursue it.

The appeal was dismissed for want of prosecution. *See* Fourth Circuit Order dated February 13,

2004 attached as Exhibit 15. As we explain, the adjudication of these issues last year in the

*ASCII I* lawsuit absolutely precludes plaintiffs from asserting the claims in this Complaint.

## ARGUMENT

Rule 12(b)(6) requires a court to dismiss a complaint for failure to state a claim when the

plaintiff can prove no set of facts that would entitle him to relief. *See, e.g., Hishon v. King &*

*Spaulding*, 476 U.S. 69, 73 (1984); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621,

624 (D.C. Cir. 1997). The court presumes the truth of well pled allegations and draws inferences

---

[13] This total, plus certain of Mr. Volftsun's attorney's fees for which ASCII *et al* may be liable, appear to comprise
the $657,000 of damages noted in plaintiffs' request for relief in this Complaint.

in the light most favorable to the plaintiffs, but disregards "legal conclusions, deductions or opinions couched as factual allegations." *See Wiggins v. Hitchens*, 853 F. Supp. 505, 508 (D.D.C. 1994). A claim that depends on relitigation of issues previously resolved against the plaintiff is not well pled. When collateral estoppel bars relitigation of issues central to the plaintiff's claim, the complaint must be dismissed for failure to state a claim. *See, e.g., Meng v. Schwartz*, 305 F. Supp.2d 49 (D.D.C. 2004). Plaintiffs here are barred from relitigating issues essential to their case, and their Complaint must accordingly be dismissed.

### I. Collateral Estoppel Bars Plaintiffs from Asserting These Claims.

To resolve *ASCII I*, Judge Hilton considered and rejected every factual allegation made by plaintiffs in this case. Their claims depend on four critical premises:

1. In drafting the ASCII Guarantee, Mr. Tucker had a conflict of interest between his clients, Volftsun and ASCII and its affiliates;

2. Mr. Weinberger and ASCII relied on Mr. Tucker and Venable to protect their interests in connection with the ASCII Guarantee;

3. Because of this conflict of interest, Mr. Tucker secretly favored the interests of Volftsun and misled Weinberger and ASCII about the terms and effects of the ASCII Guarantee; and

4. Venable should not have represented Volftsun in enforcing the ASCII Guarantee against its former clients, ASCII and Weinberger.

ASCII and its affiliates have already litigated these matters, and they lost. **Judge Hilton determined that Mr. Weinberger, while represented by counsel other than Venable, signed on behalf of ASCII an unambiguous guarantee that was binding and enforceable.** That is, Mr. Weinberger undertook the transaction with his eyes open and with the benefit of independent legal advice. The meaning of the guarantee was clear and unambiguous, rather than misleading. And, in denying ASCII's motion to disqualify Venable, **Judge Hilton also determined that ASCII and Weinberger had consented to Venable's representation of Volftsun in**

**connection with the ASCII Guarantee and waived any conflict of interest.**  Plaintiffs have had their day in court and are bound by these determinations.  ASCII's damages are thus of its own making, not the fault of counsel representing the adverse party.

The doctrine of collateral estoppel, or issue preclusion, bars a party and its privies from relitigating an issue that was:  (1) actually litigated; (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by that party; and (4) under circumstances where the issue was essential to the judgment.  *See, e.g., Wilson v. Hart*, 829 A.2d 511, 514 (D.C. 2003) (holding plaintiffs collaterally estopped from asserting a landlord-tenant claim because the underlying issues were resolved against them in prior administrative proceeding); *Hogue v. Hopper*, 728 A.2d 611, 614 (D.C. 1999) ( attorney's lawsuit against accountant for professional malpractice collaterally estopped claims dependent on issues relating to accountant's work in winding up attorney's law practice).   A non-party to the original action may rely upon it defensively, to preclude the assertion of particular claims.[14]

In this case, ASCII and Weinberger's claims are barred because Judge Hilton necessarily and conclusively determined that:

- **The ASCII Guarantee was binding and enforceable, necessarily rejecting the affirmative defense of fraudulent inducement.**
- **The key provision of the ASCII Guarantee was unambiguous as a matter of law and not misleading.**

---

[14] *See, e.g., Bryson v. Gere*, 268 F. Supp.2d 46, 57 (D.D.C. 2003) (noting that D.C. law permits assertion of non-mutual defensive collateral estoppel) (citing cases); *Hogue*, 728 A.2d at 614 (collateral estoppel may be invoked defensively by one not a party to the original action); *Ali Baba Co.  v. Wilco, Inc.*, 482 A.2d 418, 419 and n.7 (allowing offensive use of collateral estoppel); *Jackson v. District of Columbia*, 412 A.2d 948, 952-53 (D.C. 1980) (allowing non-mutual defensive use of collateral estoppel).  Judge Hilton applied Delaware law to some of the issues in the *ASCII I* litigation.  Like D.C., Delaware also allows a non-party to rely upon a prior adjudication to establish its defense.  *See, e.g., Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1217 (Del. 1991) ("Delaware, like many other jurisdictions, has abandoned the requirement of mutuality as a prerequisite to the assertion of collateral estoppel . . . sufficient that the party against whom collateral estoppel is asserted was a previous party."); *see also Messick v. Star Enterprises*, 655 A.2d 1209, 1211 (Del. 1995).

- **Venable represented only Volftsun, and not ASCII or the Weinberger interests, with respect to the ASCII Guarantee. ASCII was represented by attorney Robert Freer and the ASCII Guarantee was negotiated at arms' length.**

- **Plaintiffs consented to Venable's representation of Volftsun in connection with the ASCII Guarantee because it grew out of a written waiver that they previously provided. Plaintiffs therefore had no reasonable expectation that Venable was protecting their interests in connection with the ASCII Guarantee.**

- **It was proper and permissible for Venable to represent Volftsun in enforcing the ASCII Guarantee against ASCII, notwithstanding Venable's prior representation of the Weinberger interests and the fact that Tucker would be a witness in the trial.**

Each of these issues was contested and necessarily determined against ASCII and Weinberger by the final judgment in *ASCII I.*

Every factual assertion in plaintiffs' Complaint was likewise considered in *ASCII I* and rejected in a manner that forecloses the claims in this case. By enforcing the ASCII Guarantee, Judge Hilton necessarily determined that Weinberger was not defrauded into signing it. That determination rests on the very findings and conclusions that plaintiffs want to relitigate. In the development of the ASCII Guarantee, Mr. Weinberger was separately represented, not by Mr. Tucker, but by his own lawyer who was not affiliated with Venable. The Guarantee terms were negotiated bilaterally, not prepared by a single lawyer purporting to represent all parties to the transaction. Consequently, Mr. Tucker owed no professional duties to ASCII or Weinberger, and, as a matter of law, breached none. He simply represented the opposing side. Similarly, because, as Judge Hilton found, the ASCII Guarantee was unambiguous on its face as a matter of law[15] and was bargained for in negotiations in which ASCII *et al.* had their own counsel, it was obviously not drafted to deceive, nor was Mr. Weinberger misled into signing it. Finally, Judge

---

[15] As Judge Hilton concluded, "The language of Paragraph 4 of the Letter Agreement is clear and unambiguous concerning ASCII's Guarantee." Findings of Fact and Conclusions of Law, Exhibit 14.

Hilton's conclusion that Mr. Weinberger consented to Mr. Tucker's representation of Volftsun regarding the ASCII Guarantee and waived any conflict of interest precludes plaintiffs' claim that they relied on Mr. Tucker to protect their interests or that any such reliance was reasonable. Rather, Mr. Weinberger understood from the beginning that Mr. Tucker represented Mr. Volftsun alone in the transaction.  (The fact that Mr. Weinberger is himself an attorney, with law degrees from New York University and Harvard Law School, may have inspired the court's confidence in Mr. Weinberger's understanding and judgment.. Trial Tr. at 172.)  Judge Hilton's determinations are fatal to the claims in this case.

Malpractice claims are regularly collaterally estopped where prior litigation has determined that counsel acted properly and breached no duties.  Thus, another judge of this Court enjoined the prosecution of a malpractice claim in Superior Court against certain class action lawyers.  The Court's approval of the class action settlement necessarily rested on a conclusion that class counsel had fairly represented the plaintiff class, and the judge had necessarily adjudicated the plaintiffs' objections to the settlement terms and attorney's fees. *Thomas v. Albright*, 77 F. Supp.2d 114, 121-22 (D.D.C. 1999).  Though the would-be plaintiffs contended that their malpractice action sued for breaches of fiduciary duties to them as individuals, rather than as class members, Judge Sporkin recognized the malpractice action for what it was—an attempt to relitigate issues fully and finally resolved in the class action.  *Id.*, 77 F. Supp. 2d at 121-22.  Judge Sporkin explained:

> The dissident plaintiffs, through the Superior Court [malpractice] action, now seek from class counsel the monetary relief that counsel could not obtain in its negotiations with the State Department.  While plaintiffs claim not to be attacking the settlement or consent decree, or the adequacy of class counsel's representation in negotiations with the State Department, it is impossible to read the action as anything but a collateral attack on the findings of this Court (and the Court of Appeals) that class

14

counsel fairly and adequately carried out its duties to the members
of the class.

*Id.* at 122.  The court also noted that, as a matter of law, class counsel breached no duties to the

dissident plaintiffs in their individual capacities, because no such duties existed.  The fact that

these individuals retained separate counsel to represent their individual interests with respect to

the settlement likewise precluded them from arguing that class counsel was obliged to fulfill this

function.  *Id.*.

As in *Thomas*, plaintiffs here cannot prosecute their malpractice claims without

circumventing issues essential to the determination of *ASCII I*.  A simple exercise illustrates the

point.  If ASCII *et al.* had persuaded Judge Hilton that it was fraudulently induced to enter into

the ASCII Guarantee, the agreement would have been void or voidable, and the case would have

come out differently.  It was therefore necessary to the judgment that the court find that there

was no fraudulent inducement.  And since *no one* fraudulently induced Weinberger to sign the

ASCII Guarantee on ASCII's behalf, *Mr. Tucker* clearly did not do so.  Any claim that

Weinberger and ASCII were misled by Mr. Tucker is thus barred.  Similarly, if ASCII *et al.* had

persuaded Judge Hilton that Weinberger reasonably relied on Mr. Tucker to protect his interests

and to draft the ASCII Guarantee pursuant to his instructions that it should expire upon vote of

the TechNet Board, Judge Hilton would have agreed with ASCII either that extrinsic evidence of

the parties' intent was necessary to construe the agreement or that no meeting of the minds

occurred.  The court rejected these defenses by finding that the document resulted from arms'-

length negotiations, in which Robert Freer, and not Mr. Tucker, represented ASCII.  Indeed, the

only reason that ASCII et al. emphasized the relationship between Messrs. Weinberger and

Tucker during the motions practice and at trial was that they considered it critical to their defense in *ASCII I.*

Where a party first litigates the meaning and enforceability of a business deal and loses, courts have not hesitated to prevent that party from next turning on the transactional lawyers and blaming them for the loss.  For example, *Monyek v. Klein*, like this case, concerned whether a law firm had properly advised its client on the meaning of transactional documents prepared by the firm's attorneys.  Monyek had undertaken two real estate ventures with his lawyers.  He initially sued to establish an equitable trust for the proceeds, alleging that he had been fraudulently induced to enter into the ventures because the lawyers had not fully disclosed to him that their out-of-pocket contributions would be much smaller than his.  Following a trial, the court determined that Klein and the law firm had made full disclosure of the terms and conditions of the real estate transactions.  Monyek did not appeal that judgment.  Eighteen months later, he brought a professional malpractice claim against the lawyers, asserting that they were negligent in drafting real estate venture documents that did not clearly set forth the terms and conditions, did not ensure that he understood those terms and did not advise him to seek independent legal counsel, precisely the issues that ASCII and Weinberger raise here.  The Florida Court of Appeals concluded that the prior judgment estopped Monyek from relitigating these issues.  Because he had pled in the original case that the defendants had breached their obligations to him by failing to inform him of the key terms of the agreement, the determination in that case that the defendants dealt openly, fairly and in good faith with him barred him from making the same assertions as the basis for a legal malpractice claim.  *Monyek v. Klein*, 329 So.2d 25, 25-26 (Fla. App. 1976) (legal malpractice action alleging negligence in failing to draft documents that accurately set forth terms of real estate venture held collaterally estopped by

judgment in prior suit, finding that attorneys had made proper disclosure of terms and fulfilled fiduciary duties in same business transaction with client).

Also critical to these findings and conclusions is Judge Hilton's reason for denying the motion to disqualify Venable as counsel to Volftsun—that Weinberger and ASCII not only recognized that Tucker was acting as Volftsun's lawyer in connection with the ASCII Guarantee, they consented to that arrangement and waived any conflict of interest.  Order dated March 14, 2001 denying motion to disqualify Venable, attached as Exhibit 7; DQ Hearing Tr. at 5, Exhibit 3.  Plaintiffs are likewise bound by those determinations, which are not subject to collateral attack.  Just as they do here, ASCII and Weinberger asserted that Tucker favored Volftsun's interests over theirs in preparing the ASCII Guarantee.  *See generally* Exhibits 3-7; Cmplt ¶¶ 2, 81-93.  They also asserted that Venable "might have" confidential information of theirs that could be used their disadvantage, though they failed to specify, even by category, the type of information that the firm might have.  *Id.*  Moreover, ASCII's counsel acknowledged that he had no basis to suggest that there had actually been any misuse of client information.  DQ Hearing Tr. at 10, Exhibit 3; DQ Motion at 9, Exhibit 4.

After briefing and a hearing, Judge Hilton concluded that ASCII and its affiliates had, by their conduct, knowingly extended the conflict of interest waiver that they signed in January 2001 to cover the ASCII Guarantee.  Because ASCII and Weinberger knew that Venable was continuing to represent Volftsun for the $150,000 Convertible Debenture and the Guarantee, and did not object at the time, they consented to that continued representation of Volftsun. Moreover, in response to a question from the bench, ASCII's counsel conceded that the original waiver authorized Venable to represent Volftsun in a lawsuit relating to the original $250,000

TechNet loan.  DQ Hearing Tr., Exhibit 3, at 10.[16]  After confirming that the subsequent ASCII

Guarantee covered this $250,000 loan and that ASCII had signed the waiver letter (DQ Hearing

Tr., Exhibit 3, at 11), Judge Hilton summarized his conclusion:

> What has been presented to me, I believe that there was a
> waiver made in this situation that covers it.  That [ASCII and its
> affiliates] were on notice that [Volftsun] was being represented by
> Venable during the essence of these discussions.  And that the
> motion to disqualify counsel should be denied.

DQ Hearing Tr., Exhibit 3, at 15.  In an Order signed the same day as the hearing, Judge Hilton

denied the motion "[f]or reasons stated from the bench."  Order dated March 14, 2003 denying

motion to disqualify Venable, attached as Exhibit 7.  The issues precluded  by virtue of this

Order are clear—ASCII *et al* consented to Venable's representation of Volftsun in connection

with the ASCII Guarantee and *waived any conflict of interest* in connection with it.  *See, e.g.*,

*A.I. Credit Corp., Inc. v. Aguilar & Sebastinelli*, 113 Cal.App.4[th] 1072, 1078 (2003) (court looks

to grounds for disqualification motion and court's statements at hearing to determine which

issues are precluded by disqualification order); *Phillips v. Hughes & Luce, LLP*, 1993 WL

532057 (Tex. App. Dec. 23, 1993) (collateral estoppel arising from denial of motion to

disqualify can bar subsequent malpractice action based on same facts if it is clear that the court

considered the merits of the disqualification issue).

   Courts routinely preclude parties from filing a malpractice action based on issues

resolved adversely in a disqualification order, provided that the order is final and appealable.[17]

---

[16] "THE COURT: Well, based on the waiver, they would have right to do it as to the $250,000, wouldn't they?
MR. DOUMAR [ASCII's counsel]: I would actually agree with that, Your Honor."
[17] *E.g., Aguilar*, 113 Cal.App.4[th] at 1078 ("An order disqualifying an attorney, which was not appealed, has
collateral estoppel effect in a subsequent action involving the same issue.") (citation omitted); *Russell v. State*, 739
So.2d 58, 61-62 (Ala. Crim. App. 1999) (defendant barred from litigating disqualification of prosecutor because he
had previously asserted same alleged conflict of interest unsuccessfully as basis for ineffective assistance claim
against defense lawyer); *Phillips*, 1993 WL 532057 (malpractice action can be barred based on adjudication of

In *Tyree v. Meese*, for example, another judge of this Court found that a prior decision not to

disqualify a lawyer precluded subsequent litigation premised on the assertion that the lawyer's

conduct was improper.   There, the plaintiffs sought a declaration that certain wire intercepts of

the their communications were unlawful, on the ground that the Assistant United States Attorney

who applied for the intercept order was not a member of the bar of the state in which he

practiced.  Judge Oberdorfer wasted no time in finding this issue precluded.  He noted that the

plaintiffs had moved to disqualify the AUSA in question when they were criminally prosecuted

in another federal jurisdiction, and that the district judge had refused to disqualify the prosecutor.

Since the court in the original action had confirmed the authority of the AUSA and the propriety

of his conduct, the parties were bound by that decision.  Because premises essential to the claim

were barred by collateral estoppel, the court granted the defendant's motion to dismiss.  1988

WL 135037 (D.D.C. Nov. 29, 1998).[18]

Under District of Columbia and federal law, disqualification orders have preclusive effect

because they merge into a final judgment on the merits and are subject to review on appeal.  The

District of Columbia Court of Appeals has recognized that a disqualification motion is usually

closely connected with the parties' underlying dispute:

---

disqualification motion); *see also Holland v. Kohn*, 12 Fed. Appx. 160, 2001 WL 685543 (4th Cir. June 19, 2001)
(court would have precluded malpractice claim against attorneys after case was dismissed for failure to comply with
discovery but for the fact that the plaintiffs did not have an opportunity to litigate whether they or their counsel were
responsible for that failure).

[18] Similarly, a judicial disqualification that has been litigated cannot be collaterally attacked. In the multidistrict
asbestos litigation, asbestos manufacturer Owens-Illinois moved to disqualify attorney Kenneth Feinberg from
serving as a settlement master/referee, on the ground that Feinberg had been privy to confidential information while
previously representing the asbestos industry in legislative matters.  *In re Joint Eastern and Southern Districts
Asbestos Litigation*, 737 F. Supp. 735, 742-44 (E.D.N.Y. 1990) (collecting cases re collateral estoppel in judicial
disqualifications).  The court held Owens-Illinois to be collaterally estopped from challenging Feinberg's
participation, noting the company had been unsuccessful in pressing such a motion in Maryland, where Feinberg had
served in the same capacity. *See also State v. Ballard*, 1997 WL 430849 (Ohio App. 6th Dist. July 25, 1997)
(prisoner's petition for post-conviction relief alleging that trial judge improperly presided over his motion to vacate
plea was collaterally estopped because prisoner had previously lost motion to disqualify same judge).

> Attorney disqualification orders are usually not separate from the
> merits of the trial because the grounds for disqualification, such as
> conflict of interest or attorney misconduct, are usually intertwined
> with the dispute that is the subject of the trial; and because "[o]nly
> after assessing the effect of the ruling on the final judgment could
> an appellate court decide whether the client's rights ha[ve] been
> prejudiced." *Richardson-Merrell*, 472 U.S. at 439, 105 S.Ct. 2757.
> In addition, disqualification orders are usually subject to effective
> review on appeal from a final judgment because the harm from a
> disqualification ruling is usually sustained in the case at hand, and
> is amenable to remedy by means of reversal and a new trial.

*In re TI.B.*, 762 A.2d 20, 27 (D.C. 2000) (explaining reasons that disqualification orders cannot

be appealed under collateral order doctrine). The Supreme Court has likewise held repeatedly

that as a matter of federal law a motion to disqualify counsel cannot be separated from the merits

of the underlying litigation., whether the case is civil or criminal. *Richardson-Merrell, Inc. v.*

*Koller*, 472 U.S. 424, 431 (1985) (civil plaintiff must await final judgment to appeal

disqualification order); *Firestone Tire and Rubber Co. v. Risjord*, 449 U.S. 368, 370 (1981) (

same as to civil defendant); *Flanagan v. U.S.*, 465 U.S. 259, 260 (1984) (same as to criminal

defense counsel).[19] The leading treatise on attorney disqualification notes that federal courts

typically rebuff attempts to relitigate a disqualification issue previously decided by a state court.

Richard E. Flamm, *Lawyer Disqualification: Conflicts of Interest and Other Bases* (2001), at

§ 26.4.

Exactly as envisioned by the D.C. Court of Appeals, the disqualification issues before

Judge Hilton were inextricably intertwined with the merits of the claims and defenses in *ASCII I.*

ASCII conceded as much in its motion to disqualify when it cited the likelihood of Mr. Tucker

---

[19] Some states, such as California, permit interlocutory appeal of disqualification orders. *E.g., Reich v. Club Universe*, 125 Cal. App.3d 965 (1981) (attorney disqualified from representing plaintiffs in one class action because he was likely to be a percipient witness was properly precluded from representing class in second lawsuit on different theory). Those jurisdictions hold for the most part that the parties are collaterally estopped from relitigating the issues resolved in connection with such a disqualification. *Id.*

appearing as a witness at trial and argued that his testimony would have disproportionate weight. Reply Memorandum in Support of Motion to Disqualify Counsel, attached as Exhibit 5. True to their word, the ASCII defendants called him to testify on their behalf.[20] Mr. Weinberger himself testified in some detail about his communications with Mr. Tucker, and Mr. Freer likewise testified to the roles that he and Mr. Tucker played respectively in the negotiation and drafting of the critical document. Thus, Judge Hilton's determinations regarding Mr. Tucker's conduct in the matter—whether Mr. Tucker formed an attorney-client relationship with Weinberger and ASCII regarding the ASCII Guarantee; whether Weinberger and ASCII waived possible conflicts of interest arising in connection with Tucker's representation of Mr. Volftsun respecting the Guarantee; whether Weinberger and ASCII had the benefit of independent legal advice and representation; whether they could reasonably expect Mr. Tucker to protect their interests in the transaction; whether Mr. Tucker deceived Mr. Weinberger regarding the meaning and duration of the Guarantee vs. whether it was unambiguous on its face—were all critical to the meaning and enforceability of the ASCII Guarantee. Certainly ASCII and its affiliates had every incentive and every opportunity to litigate those issues thoroughly and vigorously before Judge Hilton.

Any claim against Tucker for Venable's representation of Volftsun in connection with the ASCII Guarantee litigation is likewise barred.[21] The propriety of Venable's participation was established by Judge Hilton's refusal to disqualify the firm at ASCII *et al.*'s request. If

---

[20] Although paragraph 132 of the Complaint suggests that Mr. Tucker breached a duty by testifying in *ASCII I* without the consent of the ASCII defendants, the trial transcript demonstrates that ASCII, as well as Volftsun, called him as a witness. Trial Tr. at 115-16. Moreover, ASCII and its affiliates had already deposed him and submitted his entire deposition transcript with their Motion for Partial Summary Judgment, waiving any claim of privilege or confidentiality. Finally, Weinberger's allegations of fraud and conflict of interest by Mr. Tucker permitted him to disclose confidential information to the extent necessary to defend himself and his reputation. Cmts. [21-23] to D.C. Rule of Professional Conduct 1.6.

[21] *See, e.g.*, Cmplt ¶¶ 125-27 (describing Venable's representation of Volftsun in *ASCII I*); ¶ 128 (Tucker's deposition testimony); and ¶ 132 (asserting that Tucker should have obtained ASCII's consent before testifying at trial).

ASCII believed that it was harmed by this ruling, then the right way to seek relief was an appeal of the final judgment in *ASCII I*. *TI.B.*, 762 A.2d at 27 (erroneous refusal to disqualify counsel can be basis for reversal and new trial if shown to have prejudiced client's rights) (citing *Richardson-Merrell*, 472 U.S. at 439). ASCII and its affiliates, however, abandoned their appeals of *ASCII I*. Moreover, Tucker and Venable relied on Judge Hilton's Order in continuing to represent Volftsun in the *ASCII I* litigation. Plaintiffs are therefore estopped from collaterally attacking the disqualification order itself, by contending that Venable breached a duty by serving as trial counsel to Volftsun. *In re Hurst Lincoln Mercury, Inc.*, 80 B.R. 894, 895 (Bankr. S.D. Ohio, 1987) (creditor that dismissed motion to disqualify debtor's counsel for conflict of interest cannot later assert same conflict of interest as basis for objection to attorney's fees).

## II. Plaintiffs' Claims for Breach of Fiduciary Duty and Fraud Must Be Dismissed for Redundancy.

Although the Complaint in this case purports to state three separate causes of action, the claims labeled fraud and breach of fiduciary duty do nothing more than restate the negligence claim for legal malpractice. Where, as here, the substance of the allegation is professional negligence, a plaintiff cannot multiply its claims by repackaging them as fraud or breach of fiduciary duty. Courts routinely dismiss such duplicative claims as duplicative or redundant.[22]

The three counts of plaintiffs' Complaint bear all the hallmarks of a single claim wearing three different labels. Count I (fraud), Count II (breach of fiduciary duty) and Count III (professional negligence) each:

- Rely on the same factual allegations;
- Allege the same wrongs and injury

---

[22] This Court can dismiss duplicative claims under either Rule 12(b)(6) or Rule 12(f), which allows courts to strike matters that are "redundant, immaterial, impertinent, or scandalous."

- Seek the same relief and damages; and
- Are based on the same legal duties and standards.

The heart of each of these claims is the same assertion that Tucker had a conflict of interest with respect to the ASCII Guarantee. The fraud count, for example, asserts "that the position advanced by Tucker, on behalf of Volftsun, on the ASCII Guarantee was directly adverse to, and conflicted with, the position and objectives of [plaintiffs]." Cmplt ¶ 177(e); *see also* ¶ 177(c). The breach of fiduciary duty count likewise asserts that Tucker failed to inform plaintiffs of his conflicts of interest and to obtain their informed consent. *Id.* ¶¶ 191-92. But as the D.C. Circuit has recognized, such claims, however they may be couched, amount to a claim for legal malpractice or professional negligence:

> While the Athridges do not characterize all these allegations as
> legal malpractice claims, their arguments are based on the premise
> that Aetna's attorneys violated a duty owed to Jorge. This sounds
> much like a claim of legal malpractice. More important, . . . any
> claim arising out of the conflict of interest alleged here is similar to
> legal malpractice claims . . . .

*Athridge v. Aetna Cas. Ins. Co.*, 351 F.3d 1166, 1174 (D.C. Cir. 2003). In *Athridge*, plaintiffs asserted a claim of bad faith against an automobile insurer for appointing counsel that allegedly pursued the insurer's interests instead of the driver's interests. *Id.* The D.C. Circuit stated that plaintiffs were actually challenging the attorney's conflict of interest, and analyzed plaintiffs' bad faith claim as a claim alleging in effect legal malpractice.[23]

The D.C. Circuit is by no means alone in this view. In *McElroy v. Robinson & Cole*, the Massachusetts Court of Appeals recently considered a complaint that included legal malpractice and breach of fiduciary duty claims, both premised on the law firm's purported conflict of

---

[23] Ultimately, the D.C. Circuit in *Athridge* affirmed the district court's granting of summary judgment on plaintiffs' bad faith claim because plaintiffs failed to present expert testimony on the applicable standard of care for legal malpractice.

interest.  As the court observed, "the judge could have properly viewed the fiduciary count as

duplicative of McElroy's claim for legal malpractice.  Both counts arise out of the same alleged

conflict of interest on the part of [Robinson & Cole], and both allege the same damages as a

result of that conflict."  2004 WL 1292042, * 3 n.9 (Mass. App. 2004).  As one federal district

court in Alabama explained:

> Claims for a lawyer's breach of fiduciary duty, violations of the
> lawyer's oath, violations of the rules of professional conduct, and
> wantonness in violation of a lawyer's duties are all subsumed in a
> legal malpractice action.  These kinds of claims may not be pursued
> as separate causes of action.

*Borden v. Clement*, 261 B.R. 275, 282 (N.D. Ala. 2001).  Like sister courts in other jurisdictions,

this Court should reject plaintiffs separate causes of action for fraud and breach of fiduciary duty

because they simply repeat plaintiffs' claims for legal malpractice.

    Indeed, this case is strikingly similar to an Ohio lawsuit in which the federal district court

dismissed fraud claims as redundant.  Because the fraud and malpractice claims were both

premised on an attorney's alleged conflict of interest, the court found the fraud claim to be

merely a repetition of what was, by its nature, a claim for legal malpractice:

> In this case, the same operative facts are alleged by Plaintiffs in
> support of their malpractice and fraud claims. . . . [C]onflict of
> interest, or, stated differently, divided loyalties, is the cornerstone
> of their malpractice claim.  It follows that the actions taken as a
> result of those divided loyalties are part and parcel of the
> malpractice claim . . . . The gist of Plaintiffs' claim is legal
> malpractice.  Defendant's motion for judgment as a matter of law
> on Plaintiffs' fraud claim is, therefore, granted.

*Mohler v. Unger*, 1994 WL 1860577, * 9-10 (S.D. Ohio 1994); *see also Sage Realty Corp. v.*

*Proskauer Rose LLP*, 675 N.Y.S.2d 14, 17 (N.Y. Sup. App. 1998) ("The fraud claim was equally

duplicative of plaintiffs' [legal] malpractice claim, which is based on the same alleged acts of

nondisclosure and misrepresentation.").  The allegations of Mr. Tucker's divided loyalties in

plaintiffs' fraud and breach of fiduciary causes of action are likewise "part and parcel of the

malpractice claim" asserted in plaintiffs' complaint.  Based on allegations of Tucker's conflicts

of interest, they are in substance mere repetitions of the claim for legal malpractice.

Courts do not hesitate to look behind the theories pursued by plaintiffs and to dismiss as

redundant fraud or breach of fiduciary duty claims that *are based on the same facts as a*

*concurrent malpractice claim.*  Authority can be found throughout the United States.[24]  *See, e.g.,*

*Fabricare Equipment Credit Corp. v. Bell, Boyd & Lloyd*, 767 N.E.2d 470, 476 (Ill. App. 2002)

("When a breach of fiduciary duty is based on the same operative facts as a legal malpractice

claim, and results in the same injury, the later claim should be dismissed as duplicative.");

*Shideler v. Dwyer*, 417 N.E.2d 281, 286 (Ind. 1986) (dismissing fraud and fiduciary duty claims,

stating that "the number and variety of Plaintiff's technical pleading labels and theories of

recovery cannot disguise the obvious fact -- apparent even to a layman -- that this is a malpractice

case"); *Fischer v. Longest*, 637 A.2d 517, 524 (Md. App. 1994) (dismissing fraud count because

"appellant essentially reiterated the same charges and allegations as were in the legal malpractice

count"); *Weil Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593

(N.Y. Sup. 2004) ("As to the claim for breach of fiduciary duty, we have consistently held that

such a claim, premised on the same facts and seeking the identical relief sought in the legal

malpractice cause of action, is redundant and should be dismissed."); *Daniels v. Lebit*, 749

N.Y.S.2d 149, 150 (N.Y. Sup. App. 2002) ("[P]laintiff's cause of action alleging . . . breach

of fiduciary duty and fraudulent misrepresentation were properly dismissed by the Supreme

Court as they are duplicative of the legal malpractice cause of action.  Those causes of action

arise from the same facts as the malpractice claim."); *Sage Realty Corp. v. Proskauer Rose LLP,*

---

[24]  For the Court's reference, attached as Appendix A is a survey of the wealth of case law in which courts
recognized that a plaintiff's fraud and/or breach of fiduciary duty claims were merely legal malpractice claims in
another guise and dismissed them.

675 N.Y.S.2d 14, 17 (N.Y. Sup. App. 1998) ("The fraud claim was equally duplicative of

plaintiffs' [legal] malpractice claim, which is based on the same alleged acts of nondisclosure

and misrepresentation."); *Endicott v. Johnrendt*, 2000 WL 796576, * 4 (Ohio App. 2000)

("[A]ppellant's breach of contract and breach of fiduciary duty claims . . . clearly 'arise out of the

manner in which [appellant] was represented within the attorney/client relationship,' and are

subsumed into the malpractice claim.") (quoting *Spencer v. McGill*, 622 N.E.2d 7 (Ohio App.

1993)).

 For example, in *Bell, Boyd & Lloyd*, the Illinois Court of Appeals affirmed the dismissal

of plaintiff's breach of fiduciary count against a law firm because it was identical to the

plaintiff's malpractice count. "Here, in Count II [alleging professional negligence], [plaintiff]

realleges and incorporates 22 of 24 counts from Count I [alleging breach of fiduciary]." 767

N.E.2d at 791. "Upon review of the complaint, we find that the breach of fiduciary duty claim is

virtually identical to the [professional] negligence claim in that it alleges the same operative facts

and the same resulting injury. Accordingly, count II was properly dismissed." *Id.* Likewise, in

*Proskauer Rose*, the New York Appellate Division upheld the dismissal of a former client's

cause of action against a law firm for fraudulent misrepresentation of its legal expertise, finding

that it simply repeated the client's claim for legal malpractice. Because the fraud claim "was

based on the same alleged acts of nondisclosure and misrepresentation [as alleged in the

malpractice claim]," the court found that "the fraud claim was . . . duplicative of plaintiff's

malpractice claim." 675 N.Y.S.2d 14, 18 (N.Y. Sup. App. 1998). Here, plaintiffs' fraud and

breach of fiduciary claims are no different than the duplicative claims dismissed in *Bell, Boyd &*

*Lloyd* and in *Proskauer Rose*: Because plaintiffs rely on the same allegations for their three

causes of action, the fraud and fiduciary duty claims should dismissed as duplicative of the malpractice claim.

In addition to relying on the same operative facts for each cause of action, the claims for fraud and breach of fiduciary duty seek precisely *the same relief and allege the same loss* as plaintiffs' malpractice claim. Indeed, the damages provision for the fraud and breach of fiduciary counts echo, word-for-word, the damages provision in the professional negligence count. In all three counts, plaintiffs seek "the actual and future cost of payment on the Forbearance Settlement Agreement, and the consequential loss of use of funds that, but for these costs, would have been put into productive use." *See, e.g.,* Cmplt ¶ 182 (fraud count), ¶ 195 (breach of fiduciary duty count), and ¶ 202 (professional negligence count). All three claims seek "compensatory damages of not less than $657,000,"[25] plus consequential and punitive damages. All three counts likewise seek disgorgement of fees that Venable received for the representation of ASCII, Weinberger and TechNet. The request for relief at the conclusion of each count is the same, verbatim. Simply put, plaintiffs do not seek independent and discrete damages or relief for each separate cause of action.

As the Georgia Court of Appeals reasoned in dismissing a fraud claim as duplicative of plaintiff's claim of legal malpractice:

> The damages flowing from [plaintiff's] separate claim that Fowler fraudulently misrepresented his expertise or experience to induce employment are no different the damages flowing from the alleged legal malpractice. Therefore, even if there had been evidence to support the allegation of fraud, there would have been no separate cause of action for fraud apart from the malpractice claim.

*Griffin v. Fowler*, 579 S.E.2d at 853; *see also Seippel v. Jenkens & Gilchrist*, 2004 WL 1907315, * 8 (S.D.N.Y. 2004) ("The Seippels' breach of fiduciary duty claim against the Sidley

---

[25] This figure corresponds roughly to principal and interest owed by ASCII on the guarantee, plus the attorney's fees and costs that Judge Hilton awarded Mr. Volftsun.

Defendants is duplicative of their legal malpractice claim. The claim arises from the same conduct . . . and involves no distinct damages."). Similarly, in *Saidi v. WMATA*, the court dismissed the plaintiff's multiple breach of duty counts as "duplicative," noting that they arose from the same facts as the remaining claim and caused a single injury. 928 F. Supp. 21, 28 (D.D.C. 1996). "[A]ny relief to which [plaintiff] may be entitled would flow from the success on the other counts." *Id.* That plaintiffs' claims for fraud and breach of fiduciary duty seek relief that is identical to the relief sought in their professional negligence count demonstrates the redundancy of Counts I and II.

In yet another indication that their claims are duplicative, *all of the claims assert—word for word—violations of the same legal standards and professional duties*. The fraud and breach of fiduciary duty counts, like the malpractice claim, assert that Mr. Tucker violated certain of the District of Columbia Rules of Professional Conduct and therefore breached his duties to the plaintiffs: "Tucker was *impressed with a duty, arising out of the Professional Rules*, to act with the utmost good faith, loyalty, and diligence toward [plaintiffs], and otherwise conduct himself and Venable lawyers under his control in accordance with the Professional Rules." *See* Cmplt ¶ 176 (fraud count), ¶ 188 (breach of fiduciary duty count) (emphasis added). All three of the counts allege verbatim that Mr. Tucker "violated the minimum requirements of the Professional Rules." *See* Cmplt ¶ 183 (fraud count), ¶ 196 (breach of fiduciary count), and ¶ 203 (professional negligence count). Indeed, nine pages of plaintiffs' 46-page complaint are devoted to allegations concerning the meaning and application of the Rules of Professional Conduct. Cmplt at 29-38, ¶¶ 151-173.

Such allegations of violation of the standard of care are at their essence claims of professional malpractice. As the District of Columbia Court of Appeals has noted, "legal

malpractice liability is predicated on a finding that the injury was proximately caused by the breach of duty." *Dalo v. Kivits*, 596 A.2d 35, 41 (D.C. 1991); *see also Williams v. Mordkofsky*, 901 F.2d 158, 163 (D.C. Cir. 1990)(professional ethics rules establish standard of care for malpractice purposes); *Waldman v. Levine*, 544 A.2d 683, 691 (D.C. 1988) (violation of Code of Professional Responsibility establishes breach of the standard of care for legal malpractice action). Plaintiffs cannot deny that their fraud and breach of fiduciary duty claims depend on asserted violations of the Rules of Professional Conduct, just like their malpractice claim.[26]

Therefore, Count I alleging fraud and Count II alleging breach of fiduciary duty should be dismissed as mere repetition of plaintiffs' allegations of professional malpractice in Count III.

### Conclusion

For the foregoing reasons, defendant Stefan F. Tucker respectfully requests that the Complaint in this matter be dismissed, with prejudice.

RESPECTFULLY SUBMITTED,

Deborah J. Jeffrey
D.C. Bar No. 416157
ZUCKERMAN SPAEDER LLP
1201 Connecticut Avenue, N.W.
Washington, DC 20036
Phone: (202) 778-1800
Fax:     (202) 822-8106

Attorneys for Defendant Stefan F. Tucker

---

[26] *See, e.g.*, Cmplt ¶ 176 (fraud count) (alleging Tucker had "a duty, *arising out of the Professional Rules*, to act . . . *in accordance with the Professional Rules*"); ¶ 188 (same) (breach of fiduciary count); ¶ 192 (breach of fiduciary duty count) ("Tucker failed *under the Professional Rules* to obtain the informed consent of Plaintiffs"); ¶ 193 (breach of fiduciary duty count) ("Tucker failed *under the Professional Rules* . . . to act in [plaintiffs'] best interest") (emphasis added).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALAN D. WEINBERGER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 04-1130 |
| v. | ) | (EGS) |
| | ) | |
| STEFAN F. TUCKER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on Tuesday, September 21, 2004, I caused the foregoing Motion to Dismiss Claims Barred by Collateral Estoppel and Duplicatively Pled, Memorandum in support thereof, and proposed form of Order, to be served upon the following by the Court's electronic filing system:

> Mitchell J. Rotbert (D Bar No. 420430)
> John A. Bonello (DC Bar No. 434817)
> The Robert Law Group, LLC
> 111 Rockville Pike
> Suite 400
> Rockville, MD 20850
> Counsel for Plaintiffs Alan D. Weinberger
>   and The ASCII Group, Inc.

Dated: 9/21/04                    By: *Deborah J. Jeffrey*
                                     Deborah J. Jeffrey