**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
ALAN D. WEINBERGER, et al.    )
                              )
        Plaintiffs,           )
                              )
    v.                        )    Civil Action No. 04-1130 (EGS)
                              )
STEFAN F. TUCKER              )
                              )
        Defendant.            )
_____)
```

## MEMORANDUM OPINION & ORDER

This case comes before the Court on defendant's motion to dismiss the complaint. Because defendant's motion turns on the preclusive effect of a prior judgment of the United States District Court for the Eastern District of Virginia, this Court *sua sponte* solicited supplemental briefing regarding whether this case should be transferred to that forum for ultimate disposition. Upon careful consideration of the parties' submissions, the responses and replies thereto, the statutory and case law, and for the reasons described below, the Court will **TRANSFER** the case to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). Accordingly, defendant's motion to dismiss will be **DENIED WITHOUT PREJUDICE** as moot.

### I.   BACKGROUND

Plaintiff Alan Weinberger is the founder and chief executive

1

officer of plaintiff ASCII Group, Inc., a buying corsortium for independent and full-service computer technology resellers.  In 1998, plaintiffs became clients of defendant Stefan Tucker, an attorney licensed to practice law in Washington, D.C.  In the autumn of 2000, Tucker introduced Weinberger to his client Lev Volfstun, a private investor in technology companies, who eventually agreed to provide plaintiffs with $400,000 in startup capital.  From this point forward, plaintiffs assert that Tucker "divided his loyalty" between his clients and "set them on a collision course."  Compl. ¶ 1.  Specifically, plaintiffs claim that Tucker engaged in malpractice, breach of fiduciary duty, and fraud in the negotiation, drafting and enforcement of a guarantee of Mr. Volfstun's investment in their high-tech companies.

Defendant argues that the principles of collateral estoppel bar plaintiffs' claims because "the Honorable Claude M. Hilton conclusively rejected these same contentions" when they were raised as defenses in Volfstun's suit to enforce the loan guarantee in the Eastern District of Virginia.  *See Lev Volfstun v. The ASCII Group, Inc., et al.,* Civil Action 02-1717 ("*ASCII I*").  According to defendant, plaintiffs are bound by Judge Hilton's determinations that the guarantee was binding, enforceable and unambiguous in all respects.  Def's. Mot. to Dismiss at 1, 11-21 (arguing that "Judge Hilton's determinations regarding Mr. Tucker's conduct in the matter--whether Mr. Tucker

2

formed an attorney-client relationship with Weinberger and ASCII regarding the ASCII Guarantee; whether Weinberger and ASCII waived possible conflicts of interest arising in connection with Tucker's representation of Mr. Volfstun respecting the Guarantee; whether Weinberger and ASCII had the benefit of independent legal advice and representation; whether they could reasonably expect Mr. Tucker to protect their interests in the transaction; whether Mr. Tucker deceived Mr. Weinberger regarding the meaning and duration of the ASCII Guarantee vs. whether it was unambiguous on its face--were all critical to the meaning and enforceability of the ASCII Guarantee").

    The doctrine of collateral estoppel, or issue preclusion, bars a party and its privies from relitigating an issue that was (1) actually litigated; (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by that party; and (4) under circumstances where the issue was essential to the judgment. *See, e.g., Wilson v. Hart*, 829 A.2d 511, 514 (D.C. 2003).  Because Judge Hilton appears to be in the best position to resolve these questions, and because the statutory prerequisites for transfer pursuant to 28 U.S.C. § 1404(a) have been met, the Court now concludes that the interests of justice would be served by a transfer of venue to the Eastern District of Virginia because that court is best suited to determine the preclusive effect of its own judgment.

*See, e.g., Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 53 n.11 (D.D.C. 2000) (transferee court "knows best which points [plaintiff] raised, or was given the opportunity to raise" in the prior case).

## II. DISCUSSION

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, the critical questions here are: (1) whether plaintiffs could have originally brought this action in the Eastern District of Virginia; and (2) whether the interests of justice favor a transfer. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (holding that the power of a district to transfer under § 1404(a) is dependent upon "whether the transferee district was one in which the action 'might have been brought' by the plaintiff"); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (Section 1404(a) vests "discretion in the district court" to transfer cases according to an "individualized, case-by-case consideration of convenience and fairness").

### A. Where the Action "Might Have Been Brought"

#### 1. Personal Jurisdiction

A federal district court can exercise jurisdiction over any person who is subject to the jurisdiction of the courts of the

4

state in which it sits.  Fed. R. Civ. P. 4(k)(1)(A).
Accordingly, the Court must examine 1) whether Virginia's long-arm statute contemplates the assertion of personal jurisdiction over the defendant, and 2) whether the exercise of personal jurisdiction in Virginia would comport with the federal constitutional standards of due process.[1]  *See Schleit v. Warren*, 693 F. Supp. 416, 418-19 (E.D. Va. 1988).  Defendant points out that a significant portion of plaintiffs' complaint describes defendant's conduct in the Commonwealth of Virginia, including, for example, the fact that the meeting where plaintiffs agreed to the original loan took place at Tucker's Virginia office, as did Tucker's involvement in the lawsuit to enforce the loan guarantee in the Eastern District of Virginia.  *See* Def's. Submission in Support of Transfer at 2-3, 6 (noting that "plaintiffs have devoted some 30 paragraphs of their Complaint, representing 20 percent of their factual allegations, to events or omissions in the Eastern District of Virginia").

   These allegations are more than sufficient to satisfy Virginia's long-arm statute.  *See* Va. Code Ann. §§ 8.01-328.1(A)(1), (2) and (3) (2000 & Supp. 2005) (providing that a Virginia court may exercise personal jurisdiction over a person,

---

[1] Note that there is no dispute as to the *subject matter* jurisdiction of the U.S. District Court for the Eastern District of Virginia.  The parties are citizens of different states and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(1).

who acts directly or by an agent, as to a cause of action arising from the person's: transacting any business in Virginia; contracting to supply services in Virginia; or causing a tortious injury by an act or omission in Virginia);[2] *see, e.g., English & Smith v. Metzger*, 901 F.2d 36 (4th Cir. 1990) (upholding court's assertion of personal jurisdiction over California attorney because the lawyer transacted business in Virginia and the cause of action arose directly from those activities)*; Willis v. Semmes, Bowen & Semmes*, 441 F. Supp. 1235 (E.D. Va. 1977)(finding personal jurisdiction over Maryland law firm and Maryland lawyers arising from bankruptcy litigation conducted by them in Virginia). Moreover, due process requires only that a defendant have "certain minimum contacts" with the territory of the forum such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In this case, Tucker will not be denied due process of law by being required to defend in Virginia plaintiffs' claims that arise, at least in part, from defendant's activity as plaintiffs' legal counsel in Virginia. *See Willis*, 441 F. Supp. at 1240 (noting that "there is no necessity to inquire what and how much occurred in which other state, as long as some of the elements of the cause of

---

[2] This statute reaches to the maximum allowed by the Due Process Clause. *See Peninsula Cruise, Inc. v. New River Yacht Sales*, 512 S.E. 2d 560, 562 (Va. 1999).

6

action arose in Virginia").

    **2.**   **Venue**

Civil actions where jurisdiction is founded only on diversity of citizenship may be brought in any judicial district in which a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). Plaintiffs argue that this test has not been met, as the majority of their complaint addresses Tucker's conduct in the District of Columbia, and "only the final fruit of Tucker's violations were realized [in Virginia]." Pls.' Opp'n to Def's. Mot. to Transfer at 5. However, it is not necessary "to identify the district having the *most* significant connection to the claim at issue" since venue may be proper in more than one district. *Production Group Intern. v. Goldman*, 337 F. Supp. 2d 788, 798 (E.D. Va. 2004) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). Accordingly, the contacts with Virginia sustaining the exercise of personal jurisdiction over defendant also support the laying of venue there.

   **B.**   **The Convenience of Parties and Witnesses and the Interests of Justice**

In deciding whether to transfer a case under Section 1404(a), the Court must undertake a "flexible and individualized analysis" of "factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the

7

interest of justice.'" *Stewart*, 487 U.S. at 30.  One of these factors is "whether one circuit is more familiar with the same parties and issues or related issues than other courts."  *See Reiffin*, 104 F. Supp. 2d at 55 (quoting *Oil, Chemical & Atomic Workers Local Union No. 6-418 v. NLRB*, 694 F.2d 1289, 1300 (D.C. Cir. 1982)); *see also Vencor Nursing Centers, L.P. v. Shalala*, 63 F. Supp. 2d 1, 6 (D.D.C. 1999) ("[t]he interest of justice factor encompasses the desire to avoid multiple litigation from a single transaction [and] to try related litigation together ..."); *Comptroller v. Calhoun First Nat'l Bank*, 626 F. Supp. 137, 141 (D.D.C. 1985) (transferring an action to a district which had cases arising from "the same factual underpinning," even though the actions in the transferee court involved different legal issues).  In this case, the interests of justice strongly support a transfer to the court that reviewed and decided the prior litigation between the parties and their privies, especially because this case turns on the preclusive effect of that court's judgment.  Litigating the matter here would "squander judicial resources" and would "run the risk of inconsistent judgments" regarding Tucker's conduct leading up to, and including, the execution of the ASCII loan guarantee.  *See Reiffin*, 104 F. Supp. 2d at 55.

In contrast, plaintiffs have cited no compelling factors weighing in favor of venue in the District of Columbia.  Although

there is normally a "strong presumption in favor of plaintiff's choice of forum," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981), "substantially less deference" is warranted where, as here, the transferring court is not plaintiff's home forum.[3]  *See Reiffin*, 104 F. Supp. 2d at 52 (citing *Piper*, 454 U.S. at 255-56).  Moreover, as defendant notes, "[t]ransferring this case to a court that sits less than nine miles away, in a neighboring jurisdiction, will have minimal effect on witnesses, the availability of compulsory process, proximity to evidence and the other factors considered under § 1404(a)."  Def's. Submission in Support of Transfer at 8.  In sum, after the "individualized, case-by-case consideration of convenience and fairness" required under § 1404(a), *see Stewart*, 487 U.S. at 29, this Court is persuaded that the overwhelming balance of case-specific factors weighs in favor of transfer to the Eastern District of Virginia.

**III. CONCLUSION**

For all of the above reasons, it is hereby

**ORDERED** that this case shall be **TRANSFERRED** to the United States District Court for the Eastern District of Virginia pursuant to the Court's discretion under 28 U.S.C. § 1404(a); and it is

---

[3] Plaintiff Weinberger is a citizen of the State of Maryland residing in Montgomery County, Maryland.  Compl. ¶ 6.  Plaintiff ASCII is a corporation organized under the laws of Delaware with its principal place of business in Montgomery County, Maryland.  Compl. ¶ 7.

**FURTHER ORDERED** that defendant's Motion to Dismiss is **DENIED WITHOUT PREJUDICE** as moot.


**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            September 29, 2005**